IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Scott D. Gerber, | Case No. 3:14 CV 2763 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER RE: ERISA CLAIM |
| -vs- | JUDGE JACK ZOUHARY |
| Ohio Northern University, et. al, | |
| Defendants. | |

## INTRODUCTION

Pending before this Court are cross-Motions for Summary Judgment on Plaintiff Scott Gerber's ERISA claim for denial of benefits (Doc. 8 at ¶¶ 58–64). Gerber contends he was not allowed to make the maximum voluntary contribution to Defendant Ohio Northern University (ONU)'s Defined Contribution Retirement Plan for the years 2002–06 (the "Plan"). ONU argues Gerber *was* permitted to make the maximum contribution based on ONU's reasonable interpretation of the Plan at that time. The parties filed Position Statements (Docs. 76, 80), with references to the Administrative Record (Doc. 79-1), followed by a Hearing before this Court (Doc. 84). Gerber, acting *pro se*, also moved for various relief in his Position Statement and at the Hearing.

## BACKGROUND

The Plan required participants to defer 7.5% of their compensation while also allowing additional voluntary contributions (Doc. 79-1 at 10). Employees could not begin participating in the Plan, however, until they had completed one year of service with ONU (*id.* at 23). The Plan stated a participant's total contributions could not exceed the limits set forth in 26 U.S.C. §§ 415 and 402(g) (*id.* at 10–11). Section 402(g) limits the total amount of "elective deferrals" a participant can make.

During the period in question (2002–06), the Plan did not distinguish between mandatory and elective deferrals in calculating the maximum amount, combining them to determine the 402(g) limit. It seems to have done this, at least in part, based on advice from TIAA-CREF, the Plan's third-party service provider. Earlier correspondence from TIAA-CREF in 1993 and 2001 suggested that "[a]ny required employee contributions by salary reductions . . . must be subtracted from [the limits] to determine the maximum voluntary 403(b) salary reductions," and "any contributions made as part of the retirement plan count toward the maximum limits" (Doc. 79-1 at 50, 52).

In 2004, the IRS proposed a regulation clarifying that the 402(g) limit should not include "a contribution that is made pursuant to an employee's one time irrevocable election made . . . as a condition of employment," but cautioned that the proposal could not "be relied upon until adopted in final form." 69 Fed. Reg. 67075, 60783, 60785 (proposed Nov. 16, 2004). The IRS finalized the rule in July 2007, with an effective date of January 1, 2009. 72 Fed. Reg. 41128, 41140 (July 26, 2007) (codified at 26 C.F.R. § 1.402(g)). Shortly before the rule was finalized, TIAA-CREF suggested in an email to ONU that the mandatory contributions should no longer be included in the annual limit calculation (Doc. 79-1 at 58). ONU then sent a letter to Plan participants informing them of this "error" (*id.* at 67) before conducting a full review of the situation.

That investigation revealed the new IRS rule did not clear up all uncertainty, as it shed little light on how to determine whether a required contribution constituted a "condition of employment." Unsure whether the one-year service requirement took the Plan's mandatory contributions out of the "condition of employment" bucket, ONU revised the Plan in 2008 to remove the requirement (*id.* at 77). It ultimately concluded, however, that its conservative interpretation of the laws and regulations as they existed before 2007 did not amount to a violation of those laws or the Plan itself. ONU thus

2

offered participants a cash payout to smooth over any ill feelings caused by the confusion. It offered participants an amount approximating their loss in deferred taxes and a reasonable return (*id.* at 79–80). Gerber rejected that offer and appealed (*id.* at 96). The Plan Administrator, ONU Vice President for Financial Affairs John Green, denied the appeal in May 2008, explaining that ONU "decided to take a conservative view of the application of the one year service requirement . . . and determined that the mandatory participant contribution to the Plan does *not* constitute a 'condition of employment'" (*id.* at 100). The Administrator further explained that adopting a more expansive view could have exposed Plan participants to tax consequences had the IRS disagreed (*id.*).

Gerber also urged the IRS to audit the Plan. It did so, in 2010, concluding that "reducing allowable elective deferrals by the amount of mandatory contributions did not result in any violation of IRC section 403(b) for the 2002 through 2006 tax years" (*id.* at 104). The IRS also noted ONU offered the cash payout on a "purely voluntary basis" (*id.*). Gerber now seeks review of the Administrator's decision.

## STANDARD OF REVIEW

In reviewing a denial of benefits under 29 U.S.C. § 1132(a)(1)(B), a district court must "conduct its review based solely upon the administrative record." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (quotation marks omitted). Because the Plan grants discretionary authority to ONU (Doc. 79-1 at 15), this Court reviews the Plan's decision under an arbitrary and capricious standard, "the least demanding form of judicial review of administrative action." *Abbott v. Pipefitters Local Union No. 522*, 94 F.3d 236, 240 (6th Cir. 1996). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

**ANALYSIS**

**Gerber's ERISA Benefits Denial Claim**

Gerber faults ONU for creating a "moving target" by repeatedly changing its version of events in communications to Plan participants. He says ONU initially told participants it had made a mistake (Doc. 79-1 at 67), then blamed TIAA-CREF before finally consulting counsel and arriving at the position ultimately expressed by the Administrator. This changing rationale, he claims, amounts to a post-hoc rationalization that violates the arbitrary and capricious standard. He cites a footnote in *University Hospitals of Cleveland v. Emerson Electric*, 202 F.3d 839, 848 n.7 (6th Cir. 2000), for support.

Gerber's argument misses the target, moving or not. As ONU argues in its Position Statement (Doc. 80 at 10), the Plan requires ONU to determine the statutory limits on contributions and apply them to each participant (*see* Doc. 79-1 at 8, 21). ONU's conservative interpretation of those limits was reasonable given the lack of guidance from the IRS at the time. As the Administrator pointed out, had ONU decided not to exclude mandatory contributions from its calculation and had the IRS taken the opposite position, Plan participants such as Gerber could have faced tax penalties. And while ONU could have read the tea leaves in 2004 and changed its stance based on the proposed IRS rule, it was hardly arbitrary or capricious to stay the course given the IRS's warning that the proposal could not be relied upon until finalized. Finally, the IRS audited the Plan at Gerber's behest and found no violation.

Nothing in *University Hospitals* counsels otherwise. There, the Sixth Circuit refused to consider a trustee's deposition testimony, offered *after* the administrative decision was made, in an attempt to shore up the Board's reasoning. The court noted this testimony was not part of the

4

administrative record and amounted to "one person's post hoc explanation of an administrative body's decision." *Univ. Hosps.*, 202 F.3d at 848 n.7. The facts here are simply different; the supposed "post-hoc rationalization" Gerber is talking about is the Administrator's actual decision. He cites no authority suggesting that an administrator's well-reasoned decision can be rendered arbitrary and capricious by some earlier inconsistent statement made *before* the administrative process begins.

Gerber resists this conclusion by arguing that even if ONU's interpretation was reasonable, ONU misapplied the limits as to him because his time at a different law school prior to his employment at ONU satisfied the one-year service requirement (*see* Doc. 79-1 at 20). That Gerber may have met the one-year service requirement earlier than other Plan participants, however, is irrelevant to the legal question of whether the mandatory contributions qualified as a condition of employment in light of the service requirement.

As ONU argued at the hearing, Gerber's dispute is not with the Administrator's May 2008 decision, but with the decision ONU made years before to interpret the IRS regulations conservatively -- whether in 2001–02 when creating the Plan or going back to the early nineties. Ultimately, Gerber faults ONU for not adopting a more aggressive interpretation back then, and for not changing the way it applied the Plan from 2002–06. In other words, Gerber is trying to advance a breach-of-fiduciary-duty claim under the guise of a denial-of-benefits claim. But as ONU points out, the statute of limitations for such a claim has long since passed, even assuming the decision Gerber faults was made as recently as 2001–02 (*see* Doc. 80 at 13–14). Gerber filed the Complaint in December 2014, more than a decade after the alleged breach and some seven years after he had actual knowledge of it. *See* 29 U.S.C. § 1113 (setting the limitations period for a breach-of-fiduciary-duty claim at "the earlier of . . . six years after [] the date of the last action which constituted a part of the breach or violation,

5

or . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation").

**Gerber's Miscellaneous Motions**

In his Position Statement, Gerber moved to amend his Complaint to include a breach-of-fiduciary-duty claim because ONU's decision was *so* arbitrary and capricious that it also constituted a fiduciary breach (Doc. 76 at 18). Denial of leave to amend is appropriate where the amendment would be futile. *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Amendment here would be futile, as Gerber may not assert a breach claim against ONU for denying his claim for benefits. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998) ("To rule in Wilkins's favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected [in *Varity Corp. v. Howe*, 516 U.S. 489 (1996)]."). Moreover, Gerber has waited until the late stages of the litigation to introduce a claim he says he has known about for six months. *See Morse*, 290 F.3d at 800 ("At some point, however, delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.").

At the hearing, Gerber moved to supplement the administrative record filed by ONU; ONU opposes (Doc. 91). When reviewing an ERISA claim, courts generally do not look to outside materials. *Cooper*, 486 F.3d at 171. Nevertheless, this Court has reviewed Gerber's proposed additions to the administrative record (*see* Doc. 91-1). The documents fall into four general categories: (1) materials already included in the administrative record; (2) materials created *after* the Plan Administrator made his decision; (3) communications between ONU and other Plan participants; and (4) materials relating to computation of damages. The proposed additions are either irrelevant

or duplicative of documents already in the administrative record, and Gerber identifies nothing in the would-be supplement that calls into question the preceding analysis.

Gerber also moves for punitive damages against ONU for the way it adjudicated his claim and for sanctions against ONU's counsel for their representations in arguing the ERISA claim. Given this Court's disposition of the ERISA claim, these arguments are both moot and meritless.

## CONCLUSION

For these reasons, Gerber's Motion for Summary Judgment (Doc. 76) is denied; his oral Motion to Supplement, and his remaining Motions, are denied as well. ONU's Motion for Summary Judgment (Doc. 80) is granted.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

                                                    December 17, 2015