IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Scott D. Gerber, | Case No. 3:14 CV 2763 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER RE: ASSAULT |
| -vs- | CLAIM AGAINST ONU |
| Ohio Northern University, et. al, | JUDGE JACK ZOUHARY |
| Defendants. | |

## INTRODUCTION

Plaintiff Scott Gerber, a law professor at Defendant Ohio Northern University (ONU), alleges his colleague, Defendant Stephen Veltri, assaulted him in October 2012. Gerber asserts ONU negligently retained or supervised Veltri because they knew of Veltri's tortious propensities but nonetheless kept him on staff and refused to discipline him. ONU moves for summary judgment, arguing Gerber has not marshaled sufficient evidence to create a genuine dispute of material fact as to ONU's alleged negligence (Doc. 65). Gerber opposes (Doc. 73), and ONU replies (Doc. 82).

## JURISDICTION

Having disposed of Gerber's ERISA claim (Doc. 96) -- the only federal claim in this case -- this Court briefly addresses its jurisdiction over the remaining state law claims. *See Heartwood v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010) (observing that a court has "an independent obligation to investigate and police the boundaries of [its] own jurisdiction" (quotation marks omitted)).

Gerber filed this case in November 2014 in the Hardin County Court of Common Pleas (Doc. 1-1). Defendants removed the case the next month, alleging federal-question jurisdiction for the ERISA claim and supplemental jurisdiction for all state-law claims (Doc. 1 at ¶ 5). This Court

determines jurisdiction at the time of removal. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007).

The Complaint presented many claims: breach of contract, assault and battery, intentional infliction of emotional distress, statutory and common law retaliation, negligent hiring and retention, and denial of ERISA benefits. Gerber wove these federal and state claims together in his Complaint, alleging, for example, that the ERISA errors were a breach of his employment contract (*see* Doc. 1-1 at ¶ 43(v)), as was ONU's handling of the investigation into Veltri's alleged assault (*id.* at ¶ 43(iv) (accusing ONU of lying "about whether [ONU] Security has jurisdiction over workplace violence")). Gerber also alleges ONU "retaliated against [him] . . . by withholding employee benefits to which Mr. Gerber was entitled" because he complained about the alleged assault (Doc. 1-1 at ¶¶ 75–76); *see also* Doc. ¶¶ 95–96 (tying Gerber's complaints about Veltri to the withholding of employee benefits for purposes of the common-law retaliation claim).

Gerber's federal ERISA claim is tied to the overarching factual allegations that encompassed all of the original state claims: namely, as early as 2006, Gerber was subjected to a campaign of bullying and retaliation by ONU and Veltri. In short, "[t]he state and federal claims . . . derive[d] from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); see also 28 U.S.C. § 1367. We now turn to the assault claim against ONU.

### BACKGROUND

To set the stage for understanding what and when ONU knew about Veltri, this Court briefly identifies the essential cast of characters. Gerber and Veltri are both tenured law professors employed by ONU at its College of Law (Doc. 61 at 39; Doc. 64 (Gerber Dep.) at 28). Veltri served as Associate Dean for Academic Affairs from approximately 2008 to mid-2012 (Doc. 61 at 40, 43). In

July 2012, he became the Law School's Interim Dean, a position he held at the time of the alleged assault (*id.* at 82). Veltri replaced outgoing Dean David Crago, who had served in that role since 2001 (Doc. 63 at 36). Crago moved up to the role of University Provost and Vice President for Academic Affairs, a position with direct supervisory authority over the Law School dean (*id.* at 35–36). Bryan Ward was Director of Clinical Programs at the Law School until July 2012, when he took over for Veltri as Associate Dean (Doc. 60 at 8–9).

Gerber alleges Veltri assaulted him at the Law School during a disagreement by grabbing his shoulder in a "strong and tight fashion" (Gerber Dep. at 408). Gerber did not seek medical attention for his shoulder until a year after the alleged assault (*id.* at 192; Doc. 41 at 1). Whether Veltri actually assaulted Gerber is irrelevant to the Motion. What is relevant is whether ONU should be held responsible for Veltri's alleged act because it was, according to Gerber, on notice of Veltri's tortious tendencies before October 2012. Gerber asserts that ONU received both specific and general complaints of Veltri's offensive behavior toward Gerber.

Dean Crago offered two specific exchanges between Veltri and Gerber. In 2007, Veltri "blew up" at Gerber during a faculty meeting, where he loudly told Gerber "we all know what your goddamn problem is" after Gerber complained about ONU's website (Gerber Dep. at 36–43). Veltri later apologized and Gerber told Crago he considered the matter closed (*id.* at 43). Later, in 2011, Veltri and Gerber had a disagreement in Veltri's office. According to Gerber, Veltri yelled "I am not accountable to you," and struck Gerber with his office door as he opened it (*id.* at 48). Gerber initially stated he did not believe Veltri intended to hit him with the door, but later clarified that he does not know whether Veltri intended to hit him or not (*id.* at 48, 259). He told Crago about the incident, but not until a year later (*id.* at 45). Gerber also referenced these incidents in a grievance he filed against

3

Veltri in the spring of 2012 after Veltri threatened him with termination if he refused to teach a class he had been assigned (Doc. 64-1 at 42).

As for general reports of Veltri's temper, Gerber admitted to anonymously authoring several critical evaluations of Veltri. Gerber wrote that Veltri "bullies people" and has a "temper" (Gerber Dep. at 145, 149). Gerber also lodged complaints of bullying by Veltri and other faculty members to Ward and ONU President Daniel DiBiasio, although he cannot remember whether he mentioned any specific incidents (*id.* at 81, 97–98).

## STANDARD OF REVIEW

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It may not weigh the evidence or make credibility judgments. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Expert Masonry, Inc. v. Boone Cty, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006) (internal quotation marks omitted).

## ANALYSIS

To prevail on his negligent retention and supervision claim, Gerber must show: (1) ONU employed Veltri; (2) Veltri exhibited criminal or tortious propensities; (3) ONU knew about those propensities; (4) Veltri caused Gerber's injury; and (5) ONU's negligent retention or supervision of Veltri proximately caused Gerber's injury. *Browning v. Ohio State Highway Patrol*, 151 Ohio App.

3d 798, 810 (2003); *see also Rozzi v. Star Pers. Servs.*, 2007-Ohio-2555, at ¶ 10 (Ct. App.). Foreseeability is "the test of employer liability" on a theory of negligent retention and supervision. *Dawson v. Airtouch Cellular*, 42 F. Supp. 2d 767, 772 (S.D. Ohio 1999) (citing *Evans v. Ohio State Univ.*, 112 Ohio App. 3d 724 (1996)). ONU focuses its arguments on the second and third elements.

The evidence of Veltri's alleged criminal or tortious propensities is slim to slight. But even assuming all the stories about Veltri are true and establish his "criminal or tortious propensities," *Rozzi*, 2007-Ohio-2555, at ¶ 10, Gerber's claim fails as to the third element: ONU's knowledge. Consider what ONU knew: (1) Veltri cursed at Gerber in a faculty meeting in 2007, after which he apologized and Gerber told ONU he considered the matter closed (Gerber Dep. at 43); (2) Veltri yelled at Gerber in his office and hit him with the door while leaving (*id.* at 36–43); (3) Gerber lodged vague complaints with Ward and DiBiasio of bullying by Veltri and others (*id.* at 81, 91, 97–98); and (4) faculty evaluations -- authored by Gerber himself -- suggested Veltri had a temper (*id.* at 145, 149). At most, ONU knew Veltri exhibited the occasional angry outburst. But that is not a reasonable basis for concluding that ONU should have foreseen Veltri would graduate from angry words to alleged acts of intentional physical violence. *See, e.g.*, *Hale v. Village of Madison*, 2006 WL 4590879, at *20–21 (N.D. Ohio 2006) (physical violence not foreseeable where employer knew of sexual harassment rumors, past "outbursts of temper," and concerns of "alarm[ing]" behavior); *Prewitt v. Alexson Servs., Inc.*, 2008-Ohio-4306, at ¶¶ 29–35 (Ct. App. 2008) (sexual assault not foreseeable where employer knew of employee's disorderly conduct conviction, unsubstantiated assault allegations, and concerns of "odd" behavior).

True, Gerber points to other examples of Veltri's supposed incompetence, including: (1) administrative assistant Barb Roberts testifying that Veltri once raised his voice to her and (2) that

5

she heard from unidentified students Veltri had thrown a chair during class (Doc. 59 at 14–15, 29–30); (3) HR Director Tonya Paul confirming during her deposition that two other ONU professors had told her they thought Veltri had a temper (Doc. 62 at 16–17); and (4) Gerber's own testimony that administrative assistant Peg Cain once told him Veltri had yelled at yet another administrative assistant, Barb DeAngelis (Gerber Dep. at 78–79). Setting aside the hearsay problems posed by all but the first statement, nothing in the record suggests any of these statements were ever communicated to anyone at ONU with supervisory authority over Veltri. As such, they do nothing to advance Gerber's claim that ONU should have seen the alleged assault coming. *See Rozzi*, 2007-Ohio-2555, at ¶ 10 ("[A] plaintiff must show, at a minimum, that the employer knew, or should have known, of the employee's criminal or tortious propensities." (quotation marks omitted)).

## CONCLUSION

ONU is entitled to judgment as a matter of law on Gerber's negligent retention and supervision claim. The Motion (Doc. 65) is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 17, 2015